UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 4:08-cr-40 |
| v. ) | |
| ) | |
| NATHANIEL ALLEN ) | *Mattice / Lee* |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

Defendant Nathaniel Allen filed a motion to suppress evidence seized from his person and automobile [Doc. 13]. The United States filed an objection to the motion [Doc. 16]. The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 15]. An evidentiary hearing on the motion was held February 11, 2009. Defendant also filed a post-hearing memoranda [Doc. 19], which has been carefully reviewed and fully considered. In summary, I find no constitutional violation with respect to any issue raised by Defendant. Thus, for the reasons set forth herein, I **RECOMMEND** that Defendant's motion to suppress evidence be **DENIED**.

**II.    Evidence**

At the evidentiary hearing, the United States offered the testimony of the sole witnesses to testify, Officer Timothy Shan Harris, who testified as follows: Officer Harris was a patrol officer with the Tullahoma Police Department at all relevant times. On April 5, 2008, around 11:09 p.m., Officer Harris was dispatched to a Quick Mart in Tullahoma based upon a store clerk's report of a man passed out in his vehicle in the store's parking lot. Upon approaching the vehicle, Officer Harris observed Defendant, who appeared to be asleep in the driver's seat of the vehicle. The

vehicle was parked facing the store and the engine was running. At that time, Officer Harris did not know whether Defendant was experiencing a medical, or some other, problem and needed help. In order to investigate, Officer Harris knocked on the window to get Defendant's attention.

During the hearing, Officer Harris was unsure whether Defendant rolled his window down or opened his car door in response to his knock, but on the DVD[1] of the encounter it appears Officer Harris opened the door of the vehicle. Officer Harris immediately smelled alcohol and asked Defendant to step out of the car. As Defendant exited the vehicle, Officer Harris observed Defendant's bloodshot eyes and smelled a strong odor of alcohol emanating from Defendant and his vehicle. Officer Harris also noticed Defendant's slurred speech and unsteady gait as they spoke outside of Defendant's vehicle. Officer Harris saw a cup containing what he thought was whiskey in the car. Officer Harris administered a patdown, which did not reveal a weapon or contraband, and he later conducted a field sobriety test. Officer Harris concluded Defendant was intoxicated.

Officer Harris also obtained Defendant's driver's license and requested that the dispatcher run a records check using Defendant's name and driver's license number for the check. The dispatcher reported to Officer Harris that there was an outstanding capias warrant for Defendant's arrest on drug possession charges.[2] Officer Harris placed Defendant under arrest within 15 minutes of the initial contact based on the evidence of intoxication and the outstanding capias warrant. Defendant was placed under arrest and, incident to the arrest, Officer Harris searched Defendant and

---

[1] A DVD containing an excerpt from the police on-board video and audio recording of the encounter was played during the hearing. A copy of the DVD, which was provided to the Court after the hearing, was marked as Defendant's Exhibit 1 and it contains much more footage of the encounter than was played during the hearing.

[2] The capias warrant and related documentation are attached to the brief of the United States [Doc. 16-2 at 4].

found a plastic bag containing a substance that appeared to be crack cocaine. Officer Harris also located jewelry and money in the vehicle.

Officer Harris acknowledged that his written report of the arrest, which was prepared within 24 hours of the arrest, does not state Defendant's vehicle's engine was running when he initially approached the vehicle. During the hearing, Officer Harris could not recall if he asked Defendant to turn off the vehicle. At approximately 00:39 on the DVD, however, Officer Harris can be heard asking Defendant to turn off his vehicle indicating it was running at the time of the initial approach.[3]

Officer Harris also agreed Defendant was not engaged in disruptive behavior as he was "passed out" at the time of the initial approach. However, Officer Harris believed Defendant was a danger to the public because he could have knocked the vehicle out of park while passed out or he could have awakened and resumed driving. Officer Harris could not remember if his patrol car was parked behind Defendant's car blocking Defendant's ability to leave, but he agreed Defendant was not free to leave once he smelled alcohol, which occurred during his initial contact with Defendant.

While Defendant appears to question whether the vehicle was running based on Officer Harris' failure to include that fact in his report, Defendant presented no evidence to contradict Officer Harris' testimony. In addition, the DVD evidence supports Officer Harris' testimony. I **FIND** the testimony of Officer Harris was not controverted by the evidence and his credibility was not impeached. Therefore, I **FIND** the uncontroverted testimony of Officer Harris provides an

---

[3] The Court does not know why neither party brought this fact to the Court's attention if the DVD was carefully reviewed prior to the hearing. The DVD recording of the request by Officer Harris and the resulting sounds indicating the vehicle was turned off at Officer Harris' request leave no doubt the ignition was on while Defendant slept in the car as testified to by Officer Harris.

3

accurate description of the relevant events at issue and constitutes the facts of this matter.

**III.     Analysis**

Although the proponent of a motion to suppress generally bears the burden of establishing his or her Fourth Amendment rights were violated by a challenged search or seizure, *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), it is the government's burden to demonstrate by a preponderance of the evidence that a particular seizure was based on probable cause. *United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004). The United States has met its burden in this case.

All that is required to justify a search or seizure under *Terry v. Ohio*, 392 U.S. 1 (1968), is "some minimal level of objective justification." *INS v. Delgado*, 466 U.S. 210, 217 (1984). In determining whether an officer had reasonable suspicion to conduct a *Terry* investigation, the court must consider the totality of circumstances to determine whether the officer had "a particularized and objective basis for suspecting legal wrongdoing." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "[T]he question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot." *Id.* (citing *Arvizu*, 534 U.S. at 274-75, 277). "*Terry* accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000).

Defendant objects to Officer Harris' initial contact with him. As the issue of whether the

4

initial contact was a consensual encounter [4] or a *Terry* investigation subject to a Fourth Amendment analysis was not addressed by the United States, this report and recommendation will assume *arguendo* the initial interaction between Officer Harris and Defendant amounted to a *Terry* investigation under the Fourth Amendment as argued by Defendant. I **FIND** Officer Harris' initial contact with Defendant was a reasonable *Terry* investigation and that Officer Harris had a particularized and objective basis for suspecting legal wrongdoing based on the facts that Defendant was not awake in his vehicle with the engine running late at night in the store parking lot and had been there long enough to generate a request for investigation of the situation from the store clerk.

Regardless of whether the initial contact was consensual or supported by reasonable suspicion, Officer Harris needed reasonable suspicion to justify his further detention of Defendant after the initial contact. Once the vehicle door was opened, Officer Harris smelled alcohol on Defendant and noticed a suspicious drink in Defendant's vehicle. As soon as Defendant exited his vehicle, Officer Harris also noticed Defendant's slurred speech, bloodshot eyes and unsteady gate. Clearly, Officer Harris had a reasonable basis to detain Defendant and investigate further based upon Defendant's bloodshot eyes, slurred speech, unsteady gait, and the odor of alcohol.

Defendant essentially argues there was no basis for a *Terry* investigation because he was not committing the offense of public intoxication under Tenn. Code Ann. § 39-17-310, as he was not an endangerment to other persons or property since he was merely asleep in his vehicle. This

---

[4] It is well recognized that not all interactions between police officers and citizens implicate the Fourth Amendment. *Delgado*, 466 U.S. at 215. The Fourth Amendment is implicated only when the circumstances of an encounter are so intimidating they demonstrate a reasonable person would have believed he was not free to leave if he had not responded. *Id.* at 216. *See also United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000) (an encounter is consensual so long as the officer "refrain[s] from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave").

5

argument is misplaced. The issue is not whether Defendant committed the offense of public intoxication – the issue is whether Officer Harris had a particularized and objective basis for suspecting legal wrongdoing. At the very least, Officer Harris had reasonable grounds to support further investigation of the possible offenses of public intoxication under Tenn. Code Ann. § 39-17-310 or driving under the influence of alcohol pursuant to Tenn. Code Ann. 55-10-401.[5]

The remaining issues are whether the degree of intrusion of Officer Harris' investigation was reasonable and whether Officer Harris had probable cause for Defendant's arrest. Defendant has not specifically argued there was an unreasonable length of or scope to the investigatory detention.[6] In any event, I **FIND** it was reasonable for the investigation to include a request for identification and a records check on the Defendant. The records check quickly revealed the existence of the outstanding capias warrant.

Defendant asserts the search of Defendant and his vehicle were invalid and the evidence seized should be suppressed, because Officer Harris had no probable cause to arrest Defendant. It appears Defendant was initially arrested based on the outstanding capias warrant and Defendant was also charged with public intoxication and other charges related to the evidence located during the search incident to his arrest. Defendant argues there was no probable cause to arrest him for public intoxication because, as he was merely asleep in his car, he was not an endangerment to other

---

[5] To violate Tenn. Code Ann. § 55-10-401, it is enough that Defendant had physical control of the vehicle as he was inside the vehicle, behind the wheel, in possession of its keys, and, but for his intoxication, had the physical ability to direct the vehicle's operation and movement. *See State v. Lawrence*, 849 S.W.2d 761, 765-66 (Tenn. 1993); *see also Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961) (individual found drunk and asleep at the wheel of a car parked in a public place could be convicted of drunk driving under Tennessee law).

[6] Defendant was told he was under arrest as a result of the outstanding capias warrant within less than twelve minutes of the initial encounter according to the DVD.

6

persons or property as required under Tenn. Code Ann. §39-17-310. Defendant also argues Officer Harris was not qualified to conduct the field sobriety test he administered to determine whether Defendant was intoxicated. These arguments are far from convincing.

First, I **FIND** Officer Harris had probable cause to arrest Defendant for public intoxication (or driving under the influence) as Officer Harris had probable cause to believe Defendant was an endangerment to both persons and property since Defendant was not awake in a running car in a public parking lot. Second, even if it were to be assumed *arguendo* that Officer Harris lacked probable cause to arrest Defendant on alcohol-related charges, Officer Harris certainly had probable cause to arrest Defendant based upon the outstanding capias warrant. After reviewing the record, and upon consideration of the applicable law, the parties' arguments, and the totality of the circumstances, I **FIND** there was ample probable cause to arrest Defendant.

It is unclear whether Defendant has abandoned his remaining argument that he may not have been the Nathaniel Allen named on the capias warrant, but this unsupported argument is completely unavailing in any event. When a police officer arrests an individual because a warrant check reveals an outstanding warrant for that individual, the officer is presumably acting in objectively reasonable reliance on the existence of a warrant given that he has no other immediate way to verify the existence or the validity of the warrant. *Arizona v. Evans*, 514 U.S. 1, 15-16 (1995); *Herring v. United States*, 129 S. Ct. 695, 696-97 (2009). There has been no showing whatsoever that the capias warrant was invalid or that Officer Harris' reliance on the dispatcher's report of the existence of the

7

capias warrant was in any way unreasonable.[7] Thus, I **FIND** that Defendant's arguments that he suffered a Fourth Amendment violation requiring suppression fail.

IV. **Conclusion**

For the reasons stated herein, I **RECOMMEND** that Defendant's motion to suppress evidence [Doc. 13] be **DENIED**.[8]

                                                s/Susan K. Lee
                                                SUSAN K. LEE
                                                UNITED STATES MAGISTRATE JUDGE

---

[7] Defendant does not contest that a police officer is entitled to search, without a warrant or probable cause, the driver's person and the passenger compartment of a vehicle incident to a lawful arrest of the driver of the vehicle. *See United States v. Hatfield*, 815 F.2d 1068, 1070-72 (6th Cir. 1987); *United States v. Mans*, 999 F.2d 966, 968- 69 (6th Cir. 1993). Likewise, Defendant does not contest that a police officer is entitled to conduct an appropriate warrantless inventory search. *See United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007).

[8] Any objections to this report and recommendation must be served and filed within ten days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).